DEWEY PEGNO & KRAMARSKY LLP
220 E. 42nd Street
New York, New York 10017
David S. Pegno (DP-7428)
(212) 943-9000
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN SOCIETY FOR TECHNION – ISRAEL INSTITUTE OF TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> -against- <br><br> FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY, <br><br> Defendant. | 07 Civ 3913 (LBS) <br><br> ECF Case <br><br> **AMENDED COMPLAINT** <br><br> **Jury Trial Demanded** |

## AMENDED COMPLAINT AND JURY DEMAND

American Society for Technion – Israel Institute of Technology, Inc. (more commonly called the "American Technion Society" or "ATS"), by its undersigned attorneys Dewey Pegno & Kramarsky LLP, alleges and claims the following against First Reliance Standard Life Insurance Company ("First Reliance") and states the following:

## NATURE OF THE CASE

1.      This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA") to recover benefits under an employee life insurance policy and to recover costs and attorneys' fees as provided by ERISA.  This is also an action arising under New York State common law.

2.      Since 1992, ATS has purchased a group life insurance policy from First Reliance covering ATS employees.  For years, ATS paid, and First Reliance accepted, substantial premiums for coverage for Jason Yoskowitz, one of ATS' senior executives, as well as other ATS employees.  Then, only after Mr. Yoskowitz's sudden death on May 2, 2006, First Reliance refused to pay the full amount of coverage for Mr. Yoskowitz on the grounds that it did not have "Evidence of Insurability" for Mr. Yoskowitz.  However, First Reliance had never requested such information regarding Mr. Yoskowitz previously, nothing in the policy required ATS or anyone else to provide it absent such a request, First Reliance had requested it for another ATS employee, and in any event First Reliance gave up any right to it by accepting substantial premiums for years without ever asking for it.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over Claim 1 pursuant to 29 U.S.C. §§ 1132, et seq. of ERISA.

4.      This Court has jurisdiction over Claim 2 arising under New York State law pursuant to 28 U.S.C. § 1367.

5.      Venue is appropriate in this district pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) in that the acts complained of by ATS were committed or occurred within the district, the plan is administered in this district, and the defendant resides in this district.

## PARTIES

6.      ATS is a New York not-for-profit corporation with its principal place of business at 55 East 59th Street, New York, NY 10022.   Its purpose is to support Technion – Israel Institute of Technology, Israel's premiere science and technology university and one of the major research centers in the world, through fundraising and other educational means.

2

7.    First Reliance is a corporation licensed to write life insurance in New York with its principal place of business at 153 East 53rd Street, New York, NY 10022.

## SUBSTANTIVE ALLEGATIONS

8.    Since 1992, ATS has purchased a group life insurance policy from First Reliance, Policy Number GL 024764 (the "Policy"), covering ATS employees. The Policy is annexed as Exhibit A.

9.    In 1995, the Policy was amended to provide coverage of three times the annual salary minus $100,000 for certain "key executives", with a maximum benefit of $500,000. In 1998 the maximum benefit was raised to $900,000.

10.    Mr. Yoskowitz was a Senior Vice President of ATS and one of the key executives eligible under the Policy for 300% of his annual salary less $100,000.

11.    Mr. Yoskowitz passed away on May 2, 2006. At the time of his death, Mr. Yoskowitz's salary was $286,000, and he was thus eligible for a death benefit from First Reliance in the amount of $758,000. His employment agreement provided that he was entitled a life insurance benefit in that amount.

12.    Since no later than July 1999, ATS has been sending to First Reliance a monthly listing reflecting the coverage for each employee and the appropriate premium. The amount listed for Mr. Yoskowitz is $758,000 and ATS paid the appropriate premium for that amount of coverage, which First Reliance accepted.

13.    After Mr. Yoskowitz's death, First Reliance asserted that Mr. Yoskowitz was entitled to only $360,000 plus interest, which it paid, and refused to pay $398,000. In a letter dated September 18, 2006, First Reliance took the position that coverage for Mr. Yoskowitz over $360,000 was "subject to our approval of his good health" and First Reliance "was not provided

with Evidence of Insurability from Mr. Yoskowitz, or [ATS]". However, nothing in the Policy required Mr. Yoskowitz or ATS to provide "Evidence of Insurability"; rather, it merely permitted First Reliance to seek information relevant to its "approval of a person's good health", which in the case of Mr. Yoskowitz it never did. The September 18, 2006 letter is annexed as Exhibit B.

14.     ATS appealed First Reliance's decision in a letter dated September 27, 2006. The September 27, 2006 letter noted that since at least 1999, First Reliance accepted premiums for full coverage without ever requesting information about Mr. Yoskowitz's "good health", even though First Reliance was aware that it had not requested or otherwise received such information regarding him and indeed had affirmatively requested such information for at least one other ATS executive. The amount of premiums paid by ATS for coverage for Mr. Yoskowitz that is now being denied is $12,284.69.

15.     First Reliance denied the appeal in a letter dated December 28, 2006 without so much as returning the premiums that it happily accepted for years for the coverage it is now denying.

16.     From 1995 through 2006, First Reliance accepted premiums for full coverage for other employees without ever requesting medical information for any of these employees. First Reliance accepted substantial premiums for full coverage on employees that, given its position here, was never in force; it is apparent if a claim had been made for such coverage, those benefits would have been denied. First Reliance did nothing to alert ATS to either the absence of medical or other information for these employees or to its own coverage position.

17.     ATS and its employees are not alone in receiving this callous, wrongful treatment from First Reliance. On information and belief, participants in other plans have been denied

coverage under similar circumstances—when they had paid for that coverage and fully expected and relied on it, only to be denied based on a supposed lack of "Evidence of Insurability".

18.    The remedy offered by First Reliance to the policy owner and beneficiary thus left out in the cold—return of excess premium (and that only offered upon request)—leaves First Reliance in a position to benefit from its own wrongdoing. It can remain silent in spite of its knowing acceptance of the insured's payment of excess premium, while at the same time taking the position that it will not pay the additional insurance benefit. If there are no claims against the policy, it simply pockets the excess premium and no one is the wiser. If there is a claim, it just as simply denies the claim and gives back the excess premium. This "heads I win, tails you lose" business practice is fundamentally at odds with any notion of fairness or propriety, or First Reliance's role under the Policy.

19.    ATS paid the additional $398,000 due under the Policy to Mr. Yoskowitz's widow on April 11, 2007, and it has taken an assignment of all of her rights under the Policy, as well as those of Mr. Yoskowitz's estate.

## CLAIMS FOR RELIEF

### Count I

20.    ATS repeats and realleges the allegations set forth in paragraphs 1-19 as though they were set forth fully herein.

21.    Mr. Yoskowitz's widow is a beneficiary under the Policy.

22.    ATS has paid the additional $398,000 due under the Policy to Mr. Yoskowitz's widow and has taken an assignment of all her rights under the Policy.

23.    ATS paid premiums for coverage under the Policy for 300% of the annual salary of Mr. Yoskowitz less $100,000, which First Reliance accepted.

24.    Nothing in the Policy required beneficiaries to provide information about their health; instead, First Reliance was permitted to request such information.  In any event, First Reliance accepted premiums for full coverage while failing to reasonably notify ATS or the participants or beneficiaries of the requirement to submit so-called "Evidence of Insurability" or other information about the condition of their health.

25.    First Reliance was in a position to draft the language in the policy in an unambiguous way that would clearly inform ATS that it, or the participants or beneficiaries, was required to submit "Evidence of Insurability".

26.    ATS has exhausted the appeal process for First Reliance's denial of benefits.

27.    First Reliance has denied the full amount of benefits required to be paid in exchange for premiums paid in violation of ERISA § 502(a)(1)(B).

28.    By reason of the above, ATS has suffered damages in the amount of $398,000 plus interest.

**Count II**

29.    ATS repeats and realleges the allegations set forth in paragraphs 1-28 as though they were set forth fully herein.

30.    ATS purchased a life insurance policy from First Reliance under which it paid premiums in exchange for coverage for its employees.

31.    Because of First Reliance's failure and refusal to pay the full amount of coverage due under the Policy, ATS has been damaged in the amount of its $398,000 payment to Mrs. Yoskowitz.

32.    ATS has been damaged because of First Reliance's wrongful conduct in accepting premium in circumstances when it would deny coverage sought under the Policy, and where it

knew or should have known that ATS was unaware of that fact. Had ATS been advised of First Reliance's position, it would have taken steps to secure appropriate coverage for Mr. Yoskowitz.

33.    As described above, ATS and its employees are not alone in receiving this callous, wrongful treatment from First Reliance. Beneficiaries of other plans have been denied coverage under similar circumstances—when they had paid for that coverage and fully expected and relied on it, only to be denied based on a supposed lack of "Evidence of Insurability".

34.    Because it accepted premiums for full coverage, First Reliance cannot deny full coverage.

35.    In the alternative, at minimum, ATS is entitled to a return of all premium it paid for Mr. Yoskowitz and all other employees for whom it paid premium and for whom First Reliance now says there was no coverage.

36.    By reason of the foregoing, ATS has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests the following relief:

a.    Ordering First Reliance to pay the amount of $398,000, representing the amount owed under the Policy, plus interest;

b.    An Order awarding costs and attorneys' fees pursuant to 29 U.S.C. § 1132(g);

c.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues properly so triable.

Dated: New York, New York
       September 20, 2007

DEWEY PEGNO & KRAMARSKY LLP

By: _____
    David S. Pegno (DP-7428)

220 East 42nd Street
New York, New York 10017
(212) 943-9000

*Attorneys for Plaintiff*

# FIRST RELIANCE STANDARD

## Life Insurance Company

Home Office: New York, New York

**POLICYHOLDER:** American Society for Technion-Israel Institute of Technology, Inc.

**POLICY NUMBER:** GL 024764

**EFFECTIVE DATE:** December 31, 1992, as amended through January 1, 2004

**ANNIVERSARY DATES:** January 1, 1993 and each January 1st thereafter.

**PREMIUM DUE DATES:** The first premium is due on the Effective Date. Further premiums are due monthly, in advance, on the first day of each month.

The Policy is delivered in New York and is governed by its laws.

We agree to provide insurance to you in exchange for the payment of premium and a signed Application. The Policy provides benefits for loss of life from injury or sickness. It insures the eligible persons for the amount of insurance shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of the Policy.

The effective date of the Policy is shown above. Insurance starts and ends at 12:01 A.M., Local Time, at your main address. It stays in effect as long as premium is paid when due. The "TERMINATION OF THE POLICY" section of the GENERAL PROVISIONS explains when the insurance can be ended.

The Policy is signed by the President and Secretary.

_Secretary_

_President_

Countersigned_____

Licensed Resident Agent

### GROUP LIFE INSURANCE
### NON-PARTICIPATING

This Group Life Policy amends the Group Life Policy previously issued to you by us. It is issued on November 19, 2004.

BROKER OF

2/84DRS-6422 Ed. 9/88

**FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY**
Home Office: New York, New York

**GROUP POLICY NUMBER:** GL 024764

**POLICY EFFECTIVE DATE:** December 31, 1992, as amended through January 1, 2004

**POLICY DELIVERED IN:** New York

**ANNIVERSARY DATE:** January 1st in each year

Application is made to us by: American Society for Technion-Israel Institute of Technology, Inc.

Federal Employer Identification Number: 13-0434195

Are all employees in the covered classes actively at work?  ___X___ Yes  _____ No
If not, please list the following for employees not actively at work:

| NAME | DATE OF BIRTH | LAST DAY WORKED | FACE AMOUNT | REASON FOR ABSENCE |
|------|---------------|-----------------|-------------|--------------------|

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

To the best of my knowledge and belief, the above statements are true and complete.  I have been authorized by the Policyholder named below to complete and verify this information.

Signed for the Policyholder:

Signed at _____ _____ this _____ day of _____

Policyholder: _____ Agent: _____

By: _____              _____
            (Signature)                                                    (Licensed Resident Agent)

_____
            (Title)

DRS-8404-

# TABLE OF CONTENTS

|  | Page |
|---|---|
| SCHEDULE OF BENEFITS | 1.0 |
| DEFINITIONS | 2.0 |
| GENERAL PROVISIONS | 3.0 |
|    Entire Contract | |
|    Changes | |
|    Incontestability | |
|    Records Maintained | |
|    Clerical Error | |
|    Misstatement of Age | |
|    Assignment | |
|    Conformity With State Laws | |
|    Certificate of Insurance | |
|    Termination of the Policy | |
| INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION | 4.0 |
|    General Group | |
|    Eligible Classes | |
|    Effective Date of Individual Insurance | |
|    Termination of Individual Insurance | |
|    Continuation of Individual Insurance | |
|    Individual Reinstatement | |
| CONVERSION PRIVILEGE | 5.0 |
| PREMIUMS | 6.0 |
|    Premium Payment | |
|    Premium Rate | |
|    Grace Period | |
| BENEFICIARY AND FACILITY OF PAYMENT | 7.0 |
| SETTLEMENT OPTIONS | 8.0 |
| WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY | 9.0 |
| ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE | 10.0 |
| CLAIMS PROVISIONS | 11.0 |
| GROUP TERM LIFE INSURANCE ACCELERATED BENEFIT RIDER | 12.0 |

## SCHEDULE OF BENEFITS

**NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED:** NONE

**ELIGIBLE CLASSES:** Each active, Full-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications:

CLASS 1: Employee

CLASS 2: Key Executive who has an "Evergreen Agreement" with the Policyholder and whose name is on file with us

**INDIVIDUAL EFFECTIVE DATE:** The day the person becomes eligible.

**INDIVIDUAL REINSTATEMENT:** Not Applicable

**MINIMUM PARTICIPATION REQUIREMENTS:** Percentage: 100%      Number of insureds: 10

**AMOUNT OF INSURANCE:**

**Basic Life and Accidental Death and Dismemberment:**

CLASS 1: Two (2) times Earnings, rounded to the next higher $1,000, subject to a maximum of $500,000, minus one (1) times Earnings, rounded to the next higher $1,000, subject to a maximum of $100,000.

CLASS 2: Three (3) times Earnings, rounded to the next higher $1,000, minus $100,000, subject to a maximum of $900,000.

CLASS 1: Applicable to employees under age 60: Amounts of basic insurance over $315,000 are subject to our approval of a person's good health. However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

CLASS 1: Applicable to employees age 60 and over: Amounts of basic insurance over $230,000 are subject to our approval of a person's good health. However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

CLASS 2: Applicable to employees under age 60: Amounts of basic insurance over $360,000 are subject to our approval of a person's good health. However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

CLASS 2: Applicable to employees age 60 and over: Amounts of basic insurance over $260,000 are subject to our approval of a person's good health. However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

The Amount of Basic Life and Accidental Death and Dismemberment Insurance will be reduced by 50% of the pre-age 70 amount at age 70 and terminates at retirement.

The Life amount will be reduced by any benefit paid under the Accelerated Benefit Rider.

**CHANGES IN AMOUNT OF INSURANCE:** Changes in the Amount of Insurance because of changes in age, class or earnings (if applicable) are effective on the date of the change, provided the Insured must be Actively At Work on the date of the change. If an insured is not Actively At Work when the change should take effect, the change will take effect on the day after the Insured has been Actively At Work for one full day.

**CONTRIBUTIONS:** Persons:  Basic Insurance: 0%

## DEFINITIONS

"We," "us" and "our" means First Reliance Standard Life Insurance Company.

"You," "your" and "yours" means the employer, union or other entity to which the Policy is issued and which is deemed the Policyholder.

"Eligible Person" means a person who meets the eligibility requirements of the Policy.

"Insured" means a person who meets the eligibility requirements of the Policy and is enrolled for this insurance.

"Actively at work" and "active work" means the person actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

"Full-time" means working for you for a minimum of 30 hours during a person's regularly scheduled work week.

"The date he/she retires" or "retirement" means the effective date of an Insured's:

(1) retirement pension benefits under any plan of a federal, state, county or municipal retirement system, if such pension benefits include any credit for employment with you;

(2) retirement pension benefits under any plan which you sponsor, or make or have made contributions; or

(3) retirement benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act while such Insured is receiving the retirement pension benefits from you.

"Earnings", as used in the SCHEDULE OF BENEFITS section, means the Insured's annual salary received from you on the day just before the date of loss. Earnings does not include commissions, overtime pay, bonuses or any other special compensation not received as basic salary.

If hourly employees are insured, the number of hours worked during a regularly scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual earnings.

"Total Disability", as used in the WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY section, means an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience.

"Loss" as used in the ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE section, with respect to:

(1) hand or foot, means the complete severance through or above the wrist or ankle joint;

(2) the eye, speech or hearing, means total and irrecoverable loss thereof.

GENERAL PROVISIONS

## ENTIRE CONTRACT

The entire contract between you and us is the Policy, your application (a copy of which is attached at issue), and any riders, endorsements and amendments. Your rights or the rights of any Insured or beneficiary shall not be affected by any provision other than one contained in this Policy, any riders, endorsements or amendments signed by you and us or in your application attached to this Policy.

## CHANGES

No agent has authority to change or waive any part of the Policy. To be valid, any change or waiver must be in writing. It must also be signed by one of our executive officers and attached to the Policy.

## INCONTESTABILITY

Any statement made in your application, or by any Insured will be deemed a representation, not a warranty. We cannot contest the Policy after it has been in force for two (2) years except for non-payment of premium. No statement made by an Insured can be used in a contest after his/her insurance has been in force during his/her lifetime for two (2) years. No statement by an Insured can be used in a contest unless it is in writing and signed by him/her and given to him/her, his/her beneficiary or legal representative.

## RECORDS MAINTAINED

You must maintain records of all Insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

## CLERICAL ERROR

If a clerical error is made, it will not affect the insurance of any Insured. No error will begin or continue the insurance of any person prior to the date it should begin or beyond the date it should end under the Policy terms, if the error had not been made.

## MISSTATEMENT OF AGE

If an Insured's age is misstated, the premium will be equitably adjusted. If the Insured's insurance is affected by the misstated age, the insurance coverage will be changed to the amount the Insured is entitled to at his/her correct age.

## ASSIGNMENT

Where there is no Third Party ownership, an Insured may assign his/her interest under the Policy. If he/she does, all rights under the Policy are transferred to the new owner. If there is an irrevocable beneficiary, the Insured must have his/her written consent to assign the insurance. No assignment will affect us unless it is in writing and is sent to us at our Office. When we receive the assignment, it will take effect as of the date it is signed. We are not liable for any action we take before we record it. We're not responsible for the validity of the assignment.

Where Third Party ownership applies, we will recognize the Third Party owner designated by the Insured. That person will be considered the sole owner with all rights of ownership. These include the right to change the beneficiary, receive payment of claims and assign the insurance.

## CONFORMITY WITH STATE LAWS

Any section of this Policy, which on its effective date, conflicts with the laws of the state in which this Policy is issued, is amended by this provision. This Policy is amended to meet the minimum requirements of those laws.

## CERTIFICATE OF INSURANCE

We will send to you an individual certificate for each Insured. The certificate will outline the insurance coverage and to whom benefits are payable.

## TERMINATION OF THE POLICY

You may cancel this Policy at any time. This Policy will be cancelled on the date we receive your letter or, if later, the date requested in your letter.

We may cancel this Policy if:

    (1) the premium is not paid at the end of the grace period; or

    (2) the number of Insureds is less than the Minimum Participation Number on the Schedule of Benefits; or

    (3) the percentage of eligible persons Insured is less than the Minimum Participation Percentage on the Schedule of Benefits.

If we cancel because of (1) above, this Policy will be cancelled at the end of the grace period. If we cancel because of (2) or (3) above, we will give you thirty one (31) days written notice prior to the date of cancellation.

You will still owe us any premium that is not paid up to the date this Policy is cancelled. We will return, pro-rata, any part of the premium paid beyond the date this Policy is cancelled.

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**GENERAL GROUP:** The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits.

**ELIGIBLE CLASSES:** The eligible classes will be those persons described on the Schedule of Benefits.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If you pay the entire premium, the insurance for an eligible Person will go into effect on the date stated on the Schedule of Benefits. If an eligible Person pays a part of the premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the date stated on the Schedule of Benefits, except that the insurance will go into effect:

    (1) on the date he/she applies, if he/she applies within thirty-one (31) days of the date he/she is first eligible; or

    (2) on the date we approve any required proof of good health. We require proof of good health if a person applies:

        (a) after thirty-one (31) days from the date he/she first becomes eligible; or

        (b) after he/she terminated this insurance but he/she remained in a class eligible for this insurance.

Changes in an insured's amount of insurance are effective as shown on the Schedule of Benefits.

If the person is not actively at work on the day his/her insurance is to go into effect, the insurance will go into effect on the day he/she returns to active work for one full day.

**TERMINATION OF INDIVIDUAL INSURANCE:** The insurance of an insured will terminate on the first of the following to occur:

    (1) the date the Policy terminates; or

    (2) the date the insured ceases to be in a class eligible for this insurance; or

    (3) the end of the period for which premium has been paid for the insured; or

    (4) the date the insured enters military service (not including Reserve or National Guard).

**CONTINUATION OF INDIVIDUAL INSURANCE:** The insurance of an insured may be continued, by payment of premium, beyond the date the insured ceases to be eligible for this insurance, but not longer than:

    (1) twelve (12) months, if due to illness or injury; or

    (2) one (1) month, if due to temporary lay-off or approved leave of absence.

**INDIVIDUAL REINSTATEMENT:** The insurance of a terminated person may be reinstated. He/she must be a member of a class eligible for this insurance. The insurance will go into effect on the day he/she returns to active work.

If a Person returns after terminating insurance at his/her request or for failure to pay premium when due, proof of good health must be approved by us before he/she may be reinstated.

## CONVERSION PRIVILEGE

An insured can use this privilege when his/her insurance is no longer in force. It has several parts. They are:

A. If the insurance ceases due to termination of employment or membership in any of this Policy's classes, an individual Life Insurance Policy may be issued. The insured is entitled to a policy without disability or supplemental benefits. A written application for the policy must be made by the insured within thirty-one (31) days after he/she terminates. The first premium must also be paid within that time. The issuance of the policy is subject to the following conditions:

   (1) The policy will, at the option of the insured, be on any one of our forms, other than term life insurance (except as described in C below). It will be the standard type issued by us for the age and amount applied for;

   (2) The policy issued will be for an amount not over what the insured had before he/she terminated;

   (3) The premium due for the policy will be at our usual rate. This rate will be based on the amount of insurance, class of risk and the insured's age at date of policy issue; and

   (4) Proof of good health is not required.

B. If the insurance ceases due to the termination or amendment of this Policy, an individual Life Insurance Policy can be issued. The same rules as in A above will be used, except that the face amount will be less any amount he/she is entitled to under any other group life policy issued or reinstated by us or another insurance company within forty-five (45) days after the date insurance coverage ceases.

C. An individual term Life Insurance Policy may, at the option of the insured, be issued for a period of one year immediately preceding the issuance of a Life Insurance Policy described in A or B above. The same rules as in A above will be used.

D. If the insurance reduces, as may be provided in this Policy, an individual Life Insurance Policy can be issued. The same rules as in A above will be used, except that the face amount will not be greater than the amount which ceased due to the reduction.

E. If an insured dies during the time in which he/she is entitled to apply for an individual policy and he/she did not apply for such policy before his/her death, then we will pay the benefit under the Group Policy that he/she was entitled to convert.

F. Any policy issued with respect to A, B, C or D above will be put in force at the end of the thirty-one (31) day period in which application must be made.

## NOTICE OF CONVERSION

G. If an insured is entitled to have an individual policy issued to him/her without proof of health, then he/she must be given notice of this right within fifteen (15) days before or after the termination or reduction of his/her insurance. Such notice must be: (1) in writing and (2) presented or mailed to the insured at his/her last known address by you or by us at the last known address furnished to us by you. If the insured is given notice more than fifteen (15) days after termination or reduction but less than ninety (90) days, the insured will have an additional period within which to convert. This additional period will end forty-five (45) days after the insured is given notice. However, this period will not extend beyond ninety (90) days after the date of termination or reduction of insurance. This insurance will not be continued beyond the period provided above.

## PREMIUMS

**PREMIUM PAYMENT:** All premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The premium due dates are stated on the Policy face page.

**PREMIUM RATE:** The premium due will be the rate per $1,000 of benefit multiplied by the entire amount of benefit volume then in force. We will furnish to you the premium rate on the Policy effective date and when it is changed. We have the right to change the premium rate:

(1) on any premium due date after the Policy is in force for 12 months; or

(2) when the extent of coverage is changed by amendment.

We will not change the premium rate due to (1) above more than once in any twelve (12) month period. We will tell you in writing at least thirty-one (31) days before the date of a change due to (1) above.

**GRACE PERIOD:** You may pay the premium up to 31 days after the date it is due. The Policy stays in force during this time. If the premium is not paid during the grace period, the Policy will be cancelled at the end of the grace period. You will still owe us the premium up to the date the Policy is cancelled.

# BENEFICIARY AND FACILITY OF PAYMENT

**BENEFICIARY:** The beneficiary will be as named in writing by the Insured to receive benefits at the Insured's death. This beneficiary designation must be on file with us or the Plan Administrator and will be effective on the date the Insured signs it. Any payment made by us before receiving the designation shall fully discharge us to the extent of that payment.

If the Insured names more than one beneficiary to share the benefit, he/she must state the percentage of the benefit that is to be paid to each beneficiary. Otherwise, they will share the benefit equally.

The beneficiary's consent is not needed if the Insured wishes to change the designation. His/her consent is also not needed to make any changes in this Policy.

If the beneficiary dies at the same time as the Insured, or within fifteen (15) days after his/her death but before we receive written proof of the Insured's death, payment will be made as if the Insured survived the beneficiary, unless noted otherwise.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, any benefits due shall be paid to the first of the following classes to survive the Insured:

    (1)  the Insured's legal spouse;
    (2)  the Insured's surviving children (including legally adopted children), in equal shares;
    (3)  the Insured's surviving parents, in equal shares;
    (4)  the Insured's surviving siblings, in equal shares; or, if none of the above,
    (5)  the Insured's estate.

We will not be liable for any payment we have made in good faith.

**FACILITY OF PAYMENT:** If a beneficiary, in our opinion, cannot give a valid release (and no guardian has been appointed), we may pay the benefit to the person who has custody or is the main support of the beneficiary. Payment to a minor shall not exceed $1,000.

If the Insured has not named a beneficiary, or the named beneficiary is not surviving at the Insured's death, we may pay up to $500 of the benefit to the person(s) who, in our opinion, have incurred expenses in connection with the Insured's last illness, death or burial.

The balance of the benefit, if any, will be held by us, until an individual or representative:

    (1)  is validly named; or

    (2)  is appointed to receive the proceeds; and

    (3)  can give valid release to us

The benefit will be held with interest at a rate set by us.

We will not be liable for any payment we have made in good faith.

## SETTLEMENT OPTIONS

The Insured may elect a different way in which payment of the Amount of Insurance can be made. He/she must provide a written request to us, for our approval, at our Office. If the option covers less than the full amount due, we must be advised of what part is to be under an option. Amounts under $2,000 or option payments of less than $20.00 each are not eligible.

If no instructions for a settlement option are in effect at the death of the Insured, the beneficiary may make the election, with our consent.

## OPTION A – FIXED TIME PAYMENT OPTION

Equal monthly payments will be made for any period chosen, up to thirty (30) years. The amount of each payment depends on the amount applied, the period selected and the payment rates we are using when the first payment is due. The rate of any monthly payment will not be less than shown in the table below. We reserve the right to change it. This change will apply only to requests for settlement elected after this change.

### Option A Table
#### Minimum Monthly Payment Rates for each $1,000 Applied

| Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment | Years | Monthly Payment |
|-------|-----------------|-------|-----------------|-------|-----------------|-------|-----------------|-------|-----------------|
| 1 | $84.47 | 7 | $13.16 | 13 | $7.71 | 19 | $5.73 | 25 | $4.71 |
| 2 | 42.86 | 8 | 11.68 | 14 | 7.26 | 20 | 5.51 | 26 | 4.59 |
| 3 | 28.99 | 9 | 10.53 | 15 | 6.87 | 21 | 5.32 | 27 | 4.47 |
| 4 | 22.06 | 10 | 9.61 | 16 | 6.53 | 22 | 5.15 | 28 | 4.37 |
| 5 | 17.91 | 11 | 8.86 | 17 | 6.23 | 23 | 4.99 | 29 | 4.27 |
| 6 | 15.14 | 12 | 8.24 | 18 | 5.96 | 24 | 4.84 | 30 | 4.18 |

## OPTION B – FIXED AMOUNT PAYMENT OPTION

Each payment will be for an agreed fixed amount. The amount of each payment may not be less than $10.00 for each $1,000 applied. Interest will be credited each month on the unpaid balance and added to it. This interest will be at a rate set by us, but not less than the equivalent of 3% per year. Payments continue until the amount we hold runs out. The last payment will be for the balance only.

## OPTION C – INTEREST PAYMENT OPTION

We will hold any amount applied under this section. Interest on the unpaid balance will be paid each month at a rate set by us. This rate will not be less than the equivalent of 3% per year.

If a beneficiary dies while receiving payments under one of these options and there is no contingent beneficiary, the balance will be paid in one sum to the proper representative of the beneficiary's estate, unless otherwise agreed to in the instructions for settlement.

Requests for settlement options other than the three (3) set out above may be made. A mutual agreement must be reached between the individual entitled to elect and us.

## WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY

We will extend the Amount of Insurance during a period of Total Disability for one (1) year if:

(1) the Insured becomes totally disabled prior to age 60;
(2) the Total Disability begins while he/she is insured;
(3) the Total Disability begins while this Policy is in force;
(4) the Total Disability lasts for at least 9 months;
(5) the premium continues to be paid; and
(6) we receive proof of Total Disability within one (1) year from the date it began.

After proof of Total Disability is approved by us, neither you or the Insured is required to pay premiums. Also, any premiums paid from the start of the Total Disability will be returned.

We will ask the Insured to submit annual proof of continued Total Disability. The Amount of Insurance may then be extended for additional one (1) year periods. The Insured may be required to be examined by a Physician approved by us as part of the proof. We will not require the Insured to be examined more than once a year after the insurance has been extended two (2) full years.

The Amount of Insurance extended will be limited to the amount of basic group life coverage on the life of the Insured that was in force at the time that Total Disability began excluding any additional benefits. This amount will not increase. This amount will reduce or cease at any time it would reduce or cease if the Insured had not been totally disabled. If the Insured dies, we will be liable under this extension only if written proof of death is received by us.

The Amount of Insurance extended for an Insured will cease on the earliest of:

(1) the date he/she no longer meets the definition of Total Disability; or
(2) the date he/she refuses to be examined; or
(3) the date he/she fails to furnish the required proof of Total Disability; or
(4) the date he/she becomes age 70; or
(5) the date he/she retires.

The Insured may use the conversion privilege when this extension ceases. Please refer to the Notice of Conversion found on the Conversion Privilege page for rules and requirements. An Insured is not entitled to conversion if he/she returns to work and is again eligible for the insurance under this Policy. If the Insured uses the conversion privilege, benefits will not be payable under the Waiver of Premium in Event of Total Disability provision unless the converted policy is surrendered to us.

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

Nothing in this section will change or affect any of the terms of the Policy other than as specifically set out in this section. All the Policy provisions not in conflict with these provisions shall apply to this section.

If an Insured suffers any one of the losses listed below, as a result of an injury, we will pay the benefit shown. The loss must be caused solely by an accident that occurs while the person is insured, and must occur within ninety (90) days of the accident. Only one benefit (the larger) will be paid for more than one loss resulting from any one accident. The Amount of Insurance can be found on the Schedule of Benefits.

| LOSS OF: | AMOUNT OF INSURANCE: |
|---|---|
| Life | The Full Amount |
| Both Hands | The Full Amount |
| Both Feet | The Full Amount |
| The Sight of Both Eyes | The Full Amount |
| Speech and Hearing | The Full Amount |
| One Hand and One Foot | The Full Amount |
| One Hand and the Sight of One Eye | The Full Amount |
| One Foot and the Sight of One Eye | The Full Amount |
| One Hand | 1/2 of the Amount |
| One Foot | 1/2 of the Amount |
| Speech or Hearing | 1/2 of the Amount |
| The Sight of One Eye | 1/2 of the Amount |

## EXCLUSIONS

A benefit will not be payable for a loss which results from:

    (1) an intentionally self-inflicted injury; or

    (2) any act of war, declared or undeclared; or

    (3) sickness or disease which contributes to the loss (except infection which results from an accidental cut or wound).

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within thirty (30) days after the loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Office or to our authorized agent. The notice should include your name, the Policy number and the Insured's name.

**CLAIM FORMS:** When we receive the notice of claim, we will send the claimant the forms to file the proof of loss. If we do not send them within fifteen (15) days after we receive notice, then the proof of loss requirements will be met by giving us a written statement of the nature and extent of the loss within ninety (90) days after the loss began.

**PROOF OF LOSS:** For any covered Loss, written proof must be sent to us within ninety (90) days. If it is not reasonably possible to give proof within ninety (90) days, the claim is not affected if the proof is sent as soon as reasonably possible.

**PAYMENT OF CLAIMS:** Payment will be made as soon as proper proof is received. All benefits will be paid to the Insured if living. Any benefits unpaid at the time of death, or due to death, will be paid to the beneficiary.

First Reliance Standard Life shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**PHYSICAL EXAMINATION:** At our own expense, we will have the right to have an Insured examined as reasonably necessary when a claim is pending. We can have an autopsy made unless prohibited by law.

**LEGAL ACTION:** No legal action may be brought against us to recover on Policy within sixty (60) days after written proof of loss has been given as required by Policy. No action may be brought after three (3) years from the time written proof of loss is received.

## GROUP TERM LIFE INSURANCE ACCELERATED BENEFIT RIDER

**THIS RIDER ADDS AN ACCELERATED BENEFIT PROVISION. RECEIPT OF THIS ACCELERATED BENEFIT WILL REDUCE THE DEATH BENEFIT AND MAY BE TAXABLE. INSUREDS SHOULD SEEK ASSISTANCE FROM THEIR PERSONAL TAX ADVISOR. ONLY THE INSURED HAS THE RIGHT TO THE ACCELERATED BENEFIT.**

Attached to Group Policy Number: GL 024764
Issued to Group Policyholder: American Society for Technion-Israel Institute of Technology, Inc.
Rider Effective Date: December 31, 1992

This Rider is attached to and made a part of the Policy shown above. The Policy is hereby amended, in consideration of the application for this Rider, by the addition of the following benefit. In this Rider, First Reliance Standard Life Insurance Company will be referred to as "we", "us", "our".

**DEFINITIONS:** This section gives the meaning of terms used in this Rider. The Definitions of the Policy and Certificate also apply unless they conflict with Definitions given here.

"Certified" or "Certification" refers to a written statement, made by a Physician on a form provided by us, as to the Insured's Terminal Illness.

"Certificate" means the document, issued to each Insured, which explains the terms of his coverage under the Group Life Insurance Policy.

"Death Benefit" means the insurance amount payable under the Policy at the death of the Insured. It does not include any amount that is only payable in the event of Accidental Death.

"Insured" means only a primary insured. Dependents are not eligible for coverage under this Accelerated Benefit Rider.

"Physician" means a duly licensed practitioner, acting within the scope of his license, who is recognized by the law of the state in which diagnosis is received. The Physician may not be the Insured or a member of his immediate family.

"Policy" means the Group Life Insurance Policy issued to the Group Policyholder under which the Insured is covered.

"Terminally Ill" or "Terminal Illness" refers to an Insured's illness or physical condition that is Certified by a Physician to reasonably be expected to result in death in less than 12 months.

"Written Request" means a request made, in writing, by the Insured to us.

All pronouns include either gender unless the context indicates otherwise.

**DESCRIPTION OF COVERAGE:** This benefit is payable to the Insured if, while insured, he is Certified as Terminally Ill. In order for this benefit to be paid:

   (1) the Insured must make a Written Request; and

   (2) we must receive from any assignee or irrevocable beneficiary their signed acknowledgment and agreement to payment of this benefit.

We may, at our option, confirm the terminal diagnosis with a second medical exam performed at our own expense.

**AMOUNT OF THE ACCELERATED BENEFIT:** The Accelerated Benefit will be an amount equal to 75% of the Death Benefit applicable to the Insured under the Policy on the date of the Certification of Terminal Illness, subject to a maximum benefit of $500,000. This benefit may be paid as a single lump sum or in installment payments mutually agreed to by us and the Insured. If we agree to installment payments, we will make four quarterly payments. Each payment will equal 25% of the total Accelerated Benefit. Once the Accelerated Benefit has been paid for any Insured under this Rider, no additional Accelerated Benefit is payable under this Rider for that Insured.

**EFFECT OF BENEFIT:** If an insured becomes eligible for, and elects to receive this benefit, it will have the following effects:

(1) The Death Benefit payable for such Insured will be reduced by the amount equal to the Accelerated Benefit paid to such Insured. The amount of the Accelerated Benefit plus the corresponding Death Benefit will not exceed the amount that would have been paid as the Death Benefit in the absence of this Rider.

(2) Any amount of insurance that would otherwise be continued under a Waiver of Premium provision will be reduced by an amount equal to the Accelerated Benefit paid to the Insured, as will the maximum Face Amount available under the Conversion Privilege. After this reduction as a result of payment of the Accelerated Benefit, any subsequent changes in the amount of insurance are subject to the Conversion Privilege as stated in the Policy to which this Rider is attached.

The payment of the Accelerated Benefit will have no effect on the premium payment requirements of the Policy.

**TERMINATION OF AN INDIVIDUAL'S COVERAGE UNDER THIS RIDER:** The coverage of any Insured under this Rider will terminate on the first of the following:

(1) the date his coverage under the Policy terminates;

(2) the date of payment of the Accelerated Benefit for his Terminal Illness; or

(3) the date he attains age 76.

**ADDITIONAL PROVISIONS:** This Rider takes effect on the Effective Date shown. It will terminate on the date the Group Policy terminates. It is subject to all the terms of the Group Policy not inconsistent herewith.

In witness whereof, we have caused this Rider to be signed by our Secretary.

Secretary



**American Society for Technion-**
**Israel Institute of Technology**

**NATIONAL OFFICERS**
*President*
Dr. Stephen A. Laser

*Chairman, Board of Directors*
Evelyn Berger

*Honorary Chairman, Board of Directors*
Martin Kellner

*Vice Chairmen, Board of Directors*
Ben Z. Sosewitz
Lewis M. Weston

*Treasurer*
Robert A. Davidow

*Assistant Treasurer*
Alan Forman

*Secretary*
Stanley Shirvan

*Assistant Secretary*
Aaron Etra

*Executive Vice President*
Melvyn H. Bloom

**COMMITTEE CHAIRS**

Joseph Tanenbaum, *Audit*
Nina Sabban, *Budget*
Zahava Bar-Nir, *Campaign Cabinet (Co-Chair)*
Alan Forman, *Campaign Cabinet (Co-Chair)*
Joel Rothman, *Campaign Resources & Public Affairs (Co-Chair)*
Edith Fischer, *Campaign Resources & Public Affairs (Co-Chair)*
Lawrence S. Jackier, *Finance/Transactions*
Jonathan Sohnis, *Grants*
Lewis M. Weston, *Investment*
Dorothy Kellner, *Leadership Development (Co-Chair)*
Michael Klein, *Leadership Development (Co-Chair)*
Dr. Hyman Mitchner, *National Programs & Missions (Co-Chair)*
Evelyn Berger, *National Programs & Missions (Co-Chair)*
Lewis M. Weston, *Nominating*
Lawrence S. Jackier, *Personnel*
Joan Seidel, *Planned Giving*
Aaron Etra, *Planning*
Norman Belmonte, *Technology*

**PAST NATIONAL PRESIDENTS**

Evelyn Berger
Edward R. Goldberg
Dr. Jack E. Goldman
Lawrence S. Jackier
Martin Kellner
Theodore H. Krengel
Irving A. Shepard
Leonard H. Sherman
Ben Z. Sosewitz
Henry Taub
Laurence A. Tisch
Lewis M. Weston

**REGIONAL OFFICES**

East Central/*Detroit*
Eastern Seaboard/*Philadelphia*
New England/*Boston*
N.Y. Metro/*New York City*
North Pacific/*San Francisco*
Southern/*Miami*
West Central/*Chicago*
Western/*Los Angeles*
Women's Division/*New York City*

May 18, 2004

First Reliance Standard
Life Insurance Company
11 West 42nd Street, 24th Fl.
New York, NY 10035

Re: Group Policy No. GL24,764

Our policy contains an administrative agreement with respect to certain Key Executives with "Evergreen Agreements". I am requesting that that agreement be amended as follows:

It is hereby understood and agreed that with respect to the following named Key Executives with "Evergreen Agreements" three times earnings minus $100,000 shall be provided in lieu of the benefit shown in the Policy and the maximum benefit will be $900,000.

Stephen Schreier
Ronnie Pallay
Beth Wilner
Lee de la Fuente
Jay Yoskowitz
Michael Schementi
Irma Sarisohn

All other policy provisions will apply.

Thank you in advance for your prompt attention to this matter.

Sincerely,

*Ronnie Pallay*

Ronnie Pallay
Associate Vice President
Personnel & Administration

Cc: Harvey Geller

06/07/2004  09:41    2123038435                FIRST RELIANCE                PAGE  01/01

# FIRST RELIANCE STANDARD
Life Insurance Company

153 East 53rd Street, Suite 4950
New York, NY 10022-4611
(212) 305-8400
(800) 882-8700

*Revised*

June 7, 2004

VIA FAX # 914-670-5766

Mr. Harvey Geller
The Geller Company
900 East Boston Post Road
Mamaroneck, NY 10543

Re:  American Society for Technion – Israel Institute of Technology
     Policy Number – GL024764

Dear Mr. Geller,

This email is to confirm our conversation of last week regarding the benefit amounts for
the "Evergreen Agreements".

Effective January 1, 2004 the benefit amount will be three times earnings minus
$100,000 to a maximum of $900,000.  The guarantee issue will be: insureds under
age 60 – $360,000 and insureds age 60 and over – $260,000.  The life rate will increase to
.43/$1,000.

Please have the client adjust their next premium statement  to reflect this rate change
effective January 1, 2004.

Please contact me if you have any questions or concerns.  Thank you!

Sincerely,

Cathy Tursi
Regional Service Representative

a **DELPHI** company

Exhibit B

# FIRST RELIANCE STANDARD
Life Insurance Company

Life Claims Department
P.O. Box 7698
Philadelphia, PA 19101-7698

September 18, 2006

American Society For Technion- Israel
Att: Ronnie Pallay
55 East 59th Street
New York, NY 10022

|  |  |  |
|---|---|---|
| Re | : | Jason Yoskowitz |
| Policyholder | : | American Society For Technion-Israel |
| Claim Number: | | 2006-164-014 |
| Policy Number: | | GL 024764 |

Dear Ms. Pallay:

We wish to extend our sincere condolences to the family of Jason Yoskowitz in their loss. This letter is in regard to the claim for Life Insurance benefits on Jason Yoskowitz.

We have completed our review of this claim for Life Insurance benefits and have determined that the amount of life insurance payable is $360,000.00 under Group Policy GL 024764 on the date of his death May 2, 2006. On July 10, 2006, we processed a check payable to Ms. Janet Yoskowitz for $362,046.57, which represents the guaranteed issue, $360,000.00 plus interest of $2,046.57. This letter will explain the basis for our determination.

As provided in policy GL 24764:

**ELIGIBLE CLASSES:** Each active, Full-time employee, except any person employed on a temporary or seasonal basis, according to the following classifications:

> CLASS 1: Employee

> CLASS 2: Key Executive who has an "Evergreen Agreement" with the Policyholder and whose name is on file with us

**AMOUNT OF INSURANCE:**

**Basic Life and Accidental Death and Dismemberment:**

> CLASS 1: Two (2) times Earnings, rounded to the next higher $1,000, subject to a maximum of $500,000, minus one (1) times Earnings, rounded to the next higher $1,000, subject to a maximum of $100,000.

> **CLASS 2: Three (3) times Earnings, rounded to the next higher $1,000, minus $100,000, subject to a maximum of $900,000.**

a *DELPHI* company

**CLASS 2:  Applicable to employees under age 60:  Amounts of basic insurance over $360,000 are subject to our approval of a person's good health.  However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.**

CLASS 2: Applicable to employees age 60 and over:  Amounts of basic insurance over $260,000 are subject to our approval of a person's good health.  However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

As provided in the **DEFINITIONS** page of GL 024764:

"Earnings", as used in the **SCHEDULE OF BENEFITS** section, means the Insured's annual salary received from you on the day just before the date of loss.  Earnings does not include commissions, overtime pay, bonuses or any other special compensation not received as basic salary.

If hourly employees are insured, the number of hours worked during a regularly scheduled work week, not to exceed 40 hours per week, times 52 weeks, will be used to determine annual earnings.

According to the Proof of Loss statement submitted, Mr. Yoskowitz was born June 9, 1946 and was age 59 on his date of death, May 2, 2006.  The life benefit claimed was $798,000.00. Mr. Yoskowitz was a Class 2 employee and his reported annual salary was $286,000.00.  His last salary increase was October 1, 2005.

We were provided with Mr. Yoskowitz's payroll records, which confirmed his annual salary of $286,000. 00 As a Class 2 employee, the life benefit would be calculated as follows:

$286,000.00 x  3 = $858,000.00 minus $100,000.00 = $758,000.000

Since Mr. Yoskowitz was under age 60, and according to the above policy provisions, amounts of insurance over $360,000 for which he became eligible would be subject to our approval of his good health.  According to our records, First Reliance Standard Life was not provided with Evidence of Insurability from Mr. Yoskowitz, or you as his employer.  Since Evidence of Insurability was not received and approved by First Reliance Standard Life, the guaranteed issue amount, $360,000.00, is the amount of the life benefit that was in effect at the time of his death, May 2, 2006.

Consequently, based on the above applicable policy provisions under policy GL 024764, we must deny the non-guaranteed issue amount of $398,000.00.

We regret our decision is not favorable and trust the above explanation satisfactorily explains our position.

Below is a statement of First Reliance Standard Life Insurance Company's appeal review procedure.

You may request a review of this determination by submitting your request in writing to:

3

First Reliance Standard Life Insurance Company
Quality Review Unit
P.O. Box 8330
Philadelphia, PA  19101-8330

This written request for review must be submitted within 60 days of your receipt of this letter.  Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits.  Only one review will be allowed, and your request must be submitted within 60 days of your receipt of this letter to be considered.

Under normal circumstances, you will be notified in writing of the final determination within 60 days of the date we receive your request for review.  If we determine that special circumstances require an extension of time for processing, you will ordinarily be notified of the decision no later than 120 days of the date we receive your request for review.

We will, upon specific request and free of charge, provide copies of all documents, records, and/or other information relevant to your claim for benefits.

In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ('the Act'), you have the right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.  Your failure to request a review within the 60 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and may affect your ability to bring a civil action under the Act.

Nothing in this letter should be construed as a waiver of First Reliance Standard Life Insurance Company's rights and defenses under the above captioned policy, and all these rights and defenses are reserved to the Company whether or not specifically mentioned herein.

Please contact this office it you should have any questions.

Sincerely,

Lorraine Miles, Senior Claims Examiner
Life Claims Department
(800) 351-7500 Extension 4257

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN SOCIETY FOR TECHNION – ISRAEL INSTITUTE OF TECHNOLOGY, INC.,<br><br><br>Plaintiff,<br><br>-against-<br><br>FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br><br>Defendant. | 07 Civ 3913 (LBS)<br><br>ECF Case<br><br>**AFFIRMATION OF SERVICE** |

KAMANI SINGH affirms under penalty of perjury that:

1.    I am over the age of eighteen years, not a party to this action, and an employee of the firm of Dewey Pegno & Kramarsky LLP, counsel for Plaintiff.

2.    On the 20th day of September 2007, I caused a copy of the foregoing **AMENDED COMPLAINT** to be served:

**BY HAND DELIVERY**

Joshua Bachrach, Esq.
Rawle & Henderson LLP
140 Broadway, Suite 4636
New York, NY 10005
(212) 575-4200
*Attorneys for Defendants*

Dated:  New York, New York
        September 20, 2007

*Kamani Singh*
Kamani Singh

Sworn to before me this
20th day of September, 2007

*Madeline Barbosa*
Notary Public

MADELINE BARBOSA
Notary Public, State of New York
No. 01BA6089858
Qualified in Bronx County
Commission Expires March 31, 20 11