UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN SOCIETY FOR TECHNION-ISRAEL INSTITUTE OF TECHNOLOGY, INC.<br><br>                    Plaintiff,<br><br>              -v.-<br><br>FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>                    Defendant. | 07 Civ. 3913 (LBS)<br><br>**MEMORANDUM<br>& ORDER** |

SAND, J.:

American Society for Technion-Israel Institute of Technology, Inc. ("Plaintiff" or "ATS") brings this action against First Reliance Standard Life Insurance Company ("Defendant" or "First Reliance") seeking money damages for First Reliance's alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* ATS alleges that First Reliance wrongfully denied the full amount of life insurance benefits claimed for Jason Yoskowitz, an ATS executive. Presently before this Court are the parties' cross-motions for summary judgment.

From 1992 to 2007, Plaintiff has purchased a group life insurance policy from First Reliance for Plaintiff's employees. (Pl.'s Mem. Supp. Summ. J. at 2; Pegno Affirmation, Ex. 1 AR 1–AR 20.) Following Mr. Yoskowitz's death on May 2, 2006, Plaintiff submitted a claim for $758,000. Defendant denied Mr. Yoskowitz's claim, arguing that, because of an alleged failure to meet Defendant's policy requirements for additional coverage, Mr. Yoskowitz was only entitled to benefits in the amount of

$360,000 plus interest. ATS paid the additional $398,000 to Mr. Yoskowitz's widow,[1] taking an assignment of all her rights under the group life insurance policy ("the Policy") as well as those of Mr. Yoskowitz's estate.[2] ATS subsequently brought suit to recover benefits under ERISA § 502(a)(1)(B).[3]

Defendant moves for summary judgment on all claims. Plaintiff cross-moves for summary judgment on Count I of the Amended Complaint, the recovery of benefits under ERISA § 502(a)(1)(B).[4] Because we find that there are material issues of fact with respect to the ambiguous language of insurance policy requirements, whether these requirements were communicated to Plaintiff, and whether Defendant was aware of the premium submitted by Plaintiff, we deny both motions for summary judgment but reject Plaintiff's claims for recovery on the basis of estoppel and waiver.

**I.     Background**

From 1992 to 2007, ATS purchased a group life insurance policy from First Reliance, covering ATS employees. Under the Policy, life insurance coverage for executive-level employees was calculated based on their earnings. The Policy provides that for Class 2 Executives such as Mr. Yoskowitz, who served as Senior Vice President, the available insurance was three times the annual salary minus $100,000 up to a maximum of $900,000. (Pegno Affirmation, Ex. 1 AR 7.) The Policy states that "[a]mounts of basic insurance over $360,000 are subject to our approval of a person's

---

[1] ATS's employment contract with Mr. Yoskowitz provided for these life insurance benefits.
[2] Plaintiff also paid Mrs. Yoskowitz $245,000 to compensate for the additional tax liability she incurred as a result of the fact that payments from Plaintiff were taxable whereas life insurance payments would have been tax-free. (Pl.'s Mem. Supp. Summ. J. 8.)
[3] ERISA § 502(a)(1)(B) reads in relevant part as follows: "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).
[4] Count II of the Amended Complaint sets forth, in essence, an equitable estoppel claim that because First Reliance accepted premiums for full coverage, it cannot now deny full coverage.

2

good health." (Pegno Affirmation, Ex. 1 AR 7, Schedule of Benefits.)  The Policy also defines, in another section, the effective date of individual insurance as follows:  "[T]he date we approve any required proof of good health.  We require proof of good health if a person applies: (a) after thirty-one (31) days from the date he/she first becomes eligible; or (b) after he/she terminated this insurance but he/she remained in a class eligible for this insurance."  (Pegno Affirmation, Ex. 1 AR 11, Individual Eligibility, Effective Date and Termination.)

At the time of his death in May 2006, Mr. Yoskowitz's salary was $286,000 and thus, according to the Policy formula, Mr. Yoskowitz was eligible for a death benefit from First Reliance in the amount of $758,000.  For the seven years preceding Mr. Yoskowitz's death, Plaintiff sent a monthly list to First Reliance of employee names, coverage amounts, and calculation of premiums due to First Reliance.  This list reflected Mr. Yoskowitz's coverage of $758,000.  (Pegno Affirmation, Ex. 1 AR 46–AR 59.)  The parties do not dispute, however, that neither Mr. Yoskowitz nor ATS ever submitted documentation of good health.  It is also uncontested that First Reliance did not ever grant approval of good health for Mr. Yoskowitz.

Shortly after Mr. Yoskowitz's death in May 2006, ATS filed a claim on his behalf for $758,000.  In response, Defendant's senior claims examiner asserted that Mr. Yoskowitz was entitled to only the basic coverage of $360,000 plus interest.  Defendant's letter cited the Policy provision stating that coverage over $360,000 was "subject to [Defendant's] approval of a person's good health]" and stated that Plaintiff never submitted, and thus Defendant never approved, any such documentation of good health. Plaintiff appealed this denial of benefits.  Defendant denied the appeal.  In its denial of

the appeal, Defendant asserted that Plaintiff was responsible for submitting proof of good health for Mr. Yoskowitz because Plaintiff's Policy was self-administered.  The parties contest whether "self-administration" implied that Plaintiff was required to affirmatively submit documentation absent a request from Defendant, or whether "self-administration" merely referred to Plaintiff's duty to process the premiums and maintain basic records.

Plaintiff subsequently filed suit in the Supreme Court of New York, and Defendant removed the case to federal court.  As the claim arises out of an employee welfare benefit plan governed by ERISA, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and the case was validly removed pursuant to 28 U.S.C. § 1441.

## II.     Standard of Review

A.  *Summary Judgment*

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that might affect the outcome of a suit under governing law.  *Kinsella v. Rumsfeld,* 320 F.3d 309, 311 (2d Cir. 2003).  To show the existence of a genuine issue, the nonmoving party must have more than a scintilla of evidence to support its position.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  In evaluating cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

B. *Review of First Reliance's Determination*

In evaluating the cross-motions, the Court must first determine the appropriate standard of review for the Defendant's denial of additional life insurance benefits. In reviewing a "denial of benefits challenged under [ERISA § 502(a)(1)(B)]," courts apply a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the written plan documents provide the plan administrator with discretionary authority to determine eligibility, the court will not disturb the administrator's conclusion unless it is arbitrary and capricious. *Id.*; *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). A decision to deny benefits is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal quotation marks omitted).

The parties do not contest that First Reliance has discretionary authority to determine benefit claims. (*See* Pegno Affirmation, Ex. 1 AR 18, Claims Provisions ("First Reliance Standard Life shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The . . . fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.")) However, Plaintiff contests that de novo review is appropriate for two reasons: first, because Defendant failed to adhere to federal regulatory deadlines in reviewing the denial of Plaintiff's claim; and second, because Defendant has a conflict of interest as it acts both as a claims evaluator and as a claims payor. We reject both of these arguments.

### 1. *Non-Compliance with Regulatory Deadlines*

Department of Labor regulations require that a plan administrator notify the claimant of a denial of a claim not later than ninety days after receipt of the claim. 29 C.F.R. § 2560.503-1(f)(1). If the decision is appealed, the plan administrator is required to notify the claimant of its decision on the appeal within sixty days. 29 C.F.R. § 2560.503-1(i)(1)(i). If the administrator fails to meet these deadlines, the claimant's administrative remedies under the benefit plan are deemed exhausted and the claimant is entitled to pursue a suit under ERISA § 502(a). 29 C.F.R. § 2560.503-1(l).

While Defendant failed to meet these regulatory deadlines, Plaintiff's argument that the Court must consequently apply a de novo standard of review is not supported by the law. The Supreme Court has reasoned that regardless of whether a beneficiary alleges substantive or procedural abuse of discretion by a plan administrator, a deferential standard of review is appropriate in evaluating an administrator's discretionary decisionmaking. *See Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008). Moreover, the *Nichols* case relied upon by Plaintiff considered a prior version of the regulations under which failure to comply with regulatory deadlines meant that the benefits were "deemed denied." *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005). In interpreting this language, *Nichols* reasoned that a claim "deemed denied" by operation of law was not the product of an exercise of discretion entitled to deferential review. *Id.* We find the rationale of *Nichols* does not apply, since the defendant in that case did not issue an appeal decision before the plaintiff filed the lawsuit. In contrast, First Reliance decided the appeal before Plaintiff filed its lawsuit,

and thus First Reliance's denial was based on an exercise of discretion, rather than inaction or procedural default as under *Nichols*. Thus, in spite of Defendant's failure to adhere to regulatory deadlines, we decline to adopt a de novo standard of review on this basis.

### 2. *First Reliance as a Conflicted Claims Evaluator*

Plaintiff also argues that because First Reliance had a dual role in both determining eligibility for benefits and paying benefits out of its own pocket, this conflict of interest means that Defendant's decision is not entitled to deference. This position misconstrues the law. In *Glenn*, the Supreme Court continued to apply a deferential standard of review to the discretionary decisionmaking of a conflicted administrator, stating that "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Glenn*, 128 S. Ct. at 2350–51. A conflict of interest may "act as a tie-breaker when the other factors are closely balanced;" it may weigh more heavily "where circumstances suggest a higher likelihood that it affected the benefits decision" but less heavily "where the administrator has taken active steps to reduce potential bias . . . , for example, by walling off claims administrators from those interested in firm finances." *Id.* at 2351. Thus, while we reject Plaintiff's request for a de novo review of First Reliance's decision, we are mindful that its status as a conflicted claims administrator is a factor in an evaluation, under an arbitrary and capricious standard, of whether Defendant abused its discretion in denying Plaintiff's claim.

**III.    Discussion**

   **a.  Interpretation of the Policy**

Defendant contends that this case begins and ends on the plain and unambiguous language of the Policy. "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the . . . entire . . . agreement." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). Defendant's core argument is that under the plain language of the Policy, coverage above the basic insurance amount of $360,000 requires approval of good health. The Court finds that the question of whether the Policy requires Defendant to request evidence of good health, or imposes on Plaintiff an affirmative burden to supply such evidence, is a disputed issue with both parties submitting depositions and records to support their respective claims.

Defendant cites to the Policy's Schedule of Benefits, which states that amounts of insurance over $360,000 "are subject to [First Reliance's] approval of a person's good health." (Pegno Affirmation, Ex. 1 AR 7.) That same provision goes on to state that "any proof of good health required due to late application for this insurance . . . will be at no expense to [First Reliance]." (*Id.*) Plaintiff in turn points to a separate section of the Policy entitled "Individual Eligibility, Effective Date and Termination," which states that "[First Reliance] require[s] proof of good health" if a person (1) submits a late application or (2) applies for coverage after having previously terminated the insurance. (Pegno Affirmation, Ex. 1 AR 11.)

The language in the "Schedule of Benefits" section of the Policy, which Plaintiff had in its possession, clearly states that additional insurance coverage is subject to

8

Defendant's approval.  However, our inquiry does not end there because the Policy language does not clearly place the burden on the *employee* to submit evidence of insurability along with their applications for insurance coverage.  When read as a whole, the Policy is ambiguous as to whether Plaintiff has an affirmative duty to supply evidence of good health, or whether Defendant is to request that evidence.  *See Fay*, 287 F.3d at 104 (stating that plan must be reviewed as a whole); *cf. Perreca v. Gluck*, 295 F.3d 215, 224 (2d Cir. 2002) (vacating grant of summary judgment due to ambiguity in plan language on start date of pension coverage).

The cases relied upon by Defendant are inapposite, because the policies in those cases contained clear language placing the burden on the employee to submit evidence of insurability, and the claimants had actual knowledge of those requirements.  *E.g.*, *Schad v. Stamford Health Sys., Inc.*, No. 3:06-cv-809, 2008 U.S. Dist. LEXIS 89069, at *2–*3 (D. Conn. Nov. 3, 2008) (enrollment form stated, next to checkbox for selecting additional coverage, that "it will be necessary to provide Evidence of Insurability" and that coverage "will be subject to approval by the plan insurer"); *Lawler v. Unum Provident Corp.*, No. 05-CV-71408, 2006 U.S. Dist. LEXIS 61005, at *7–*9 (E.D. Mich. Aug. 17, 2006) (policy clearly stated that the "employee must submit an application and evidence of insurability" and thus the plaintiff's reliance on the defendant's acceptance of premiums was not reasonable).  In contrast, the Policy language at issue here is ambiguous for the reasons explained above.  Moreover, there is no evidence on the record that Mr. Yoskowitz or ATS had actual knowledge of an affirmative requirement, absent a request from First Reliance, to submit proof of good health.[5]

---

[5] Defendant asserts that the Plan Administrator's Guide provided to self-administered policy subscribers, including ATS, contains instructions that employees who request coverage in excess of guaranteed issue

Further compounding the ambiguity is the Policy section on effective date of coverage, which could reasonably be read to delineate only two situations where proof of good health will be required by Defendant: first, where claimants submit a late application, and second, where claimants have reapplied for coverage after voluntary termination of insurance. As Mr. Yoskowitz did not fall under either of these categories, Plaintiff could have reasonably interpreted this section to mean that absent a request from Defendant, Plaintiff did not need to submit proof of good health for Mr. Yoskowitz. Thus, we find that there is a disputed issue of fact over the proper interpretation of the Policy.[6]

Summary judgment is also inappropriate because First Reliance's review process for Plaintiff's claim raises genuine issues as to whether the review of the appeal was influenced by a conflict of interest such that denial of the claim was arbitrary and capricious. While the record presently before the Court does not show that First Reliance was "*in fact* influenced by the conflict of interest," Plaintiff raises questions of material fact related to the effect of First Reliance's conflict of interest that are appropriate for resolution by a factfinder. *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir.

---

"must provide proof of good health by completing an Evidence of Insurability form (LRS-9135-0102). The employee . . . will become insured on the later of the date stated in the Policy, or the date [First Reliance] approves the required proof of good health." (Pegno Aff. Ex. 4, at 4.) However, the record is unclear as to whether this Plan Administrator's Guide was ever provided to ATS. (*See* Pegno Aff. Ex. 5, Deposition of Peter T. Sailor, 21:1–6; Aff. of Ronnie Pallay ¶ 2; Def.'s Mem. Opp'n Pl.'s Mot. Summ. J., Ex. A.)

[6] The ambiguity in Policy language and the parties' understanding of Policy requirements is further complicated by the past practices of Plaintiff and Defendant. As Plaintiff points out, when ATS submitted insurance forms for ATS executive director Melvyn Bloom, Defendant requested documentation on proof of good health before granting Mr. Bloom his requested additional coverage. (Bachrach Decl., Ex. G.) Specifically, according to ATS's personnel administrator Ronnie Pallay, Harvey Geller, the insurance broker for the policy, specifically requested paperwork relating to Mr. Bloom's proof of good health. (Bachrach Decl., Ex. C at 65.) No such request was made with respect to Mr. Yoskowitz's insurance applications. The parties dispute whether Mr. Geller knew of or communicated to ATS this requirement of proof of good health with respect to Mr. Yoskowitz. Whether Mr. Geller had actual knowledge of the requirement, and whether he was an agent of Plaintiff or of Defendant, are both disputed material facts in the case. To this end, the Court notes that Mr. Geller has not been deposed. (See Tr. of Oral Argument on May 12, 2009, at 16.)

10

2000) (internal quotation marks omitted). For example, First Reliance represents that an appeal of a denial of benefits claim is "conducted separately from the individual(s) who made the original decision to deny benefits." (Pegno Affirmation, Ex. 1 AR 23.) However, Gene Shaw, the ATS claims reviewer who decided the appeal, consulted with Peter Sailor, the director of the life insurance claims department, regarding Mr. Shaw's decision on the appeal. (Pegno Aff. Ex. 9, Deposition of Gene Shaw, at 30:20–32:14). As Director of Life Claims, Mr. Sailor served as the supervisor of the claims review department. Though the record is unclear, Mr. Sailor may have been involved in the initial decision denying the full amount of Mr. Yoskowitz's claim, which would have been in violation of ATS's internal policy and procedure on review of claims. (Pegno Affirmation, Ex. 7, Deposition of Lorraine Miles, 31:12–14, 37:17–21 (indicating consultation with Mr. Sailor over state law with respect to claim denials))

Under *Glenn*, in reviewing a denial of benefits by a conflicted claims administrator, courts may consider whether the administrator is "wall[ed] off" from those interested in the finances of the insurance company. 128 S. Ct. at 2351. Although the record does not show that First Reliance was in fact operating under a conflict of interest in denying Mr. Yoskowitz's claim, the allegations and sworn statements raise a genuine question of material fact such that summary judgment is inappropriate.

In sum, the Court finds that the Policy language is ambiguous as to the burden of submission of records of good health, and that ambiguity is augmented by conflicting evidence as to whether Plaintiff, either through the Plan Administrator's Guide or through its (alleged) agent, Mr. Geller, was informed of an affirmative obligation to submit proof of good health. Consequently, we conclude that there exist genuine

questions of material fact and deny the cross-motions for summary judgment as to the ERISA claims.  We now turn to Plaintiff's state law claims.

### b. Plaintiff's Estoppel Claims

Plaintiff argues that because Defendant accepted premiums for Mr. Yoskowitz for additional coverage, it is now estopped from denying the full amount of life insurance benefits.  The elements of equitable estoppel are (1) material misrepresentation, (2) reliance, and (3) damage.  *Lee v. Burkhart*, 991 F.2d 1004, 1008 (2d Cir. 1993).  The elements of promissory estoppel are (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.  *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999).  While "equitable and promissory estoppel are valid legal theories of recovery in the ERISA context," both theories "require that plaintiff demonstrate the existence of extraordinary circumstances, such as an intentional inducement that goes beyond the concept of reasonable reliance."  *Stoval v. First Unum Life Ins. Co.*, 20 Fed. Appx. 47, 50 (2d Cir. 2001) (rejecting the plaintiff's claim that, because the defendant deducted premiums from monies to which the insured was otherwise entitled, defendant was estopped from denying coverage); *see also O'Connor v. Provident Life & Accident Co.*, 455 F. Supp. 2d 670, 678 (E.D. Mich. 2006) (finding that, despite acceptance of premiums, estoppel did not apply because there was no evidence that the defendant was attempting to reap an unjust benefit by extracting premiums when it knew it had a defense to coverage).  Plaintiff has not presented any evidence of such extraordinary circumstances, and even when read in the light most favorable to Plaintiff, the record does not support a theory that First Reliance knew Mr. Yoskowitz was paying higher premiums and intended for

ATS to continue submitting premiums despite knowing that Mr. Yoskowitz was ineligible for benefits. Consequently, the Court declines to apply a theory of estoppel against Defendant.

### c. Plaintiff's Waiver Claim

ATS also argues that First Reliance waived the Policy provision requiring evidence of good health by failing to raise it during the administrative appeal process. This argument fails because under relevant Second Circuit law, proof of good health was a required element for additional coverage and thus cannot be waived. In *Juliano v. Health Maintenance Organization of New Jersey, Inc.*, the Second Circuit declined to apply waiver against an HMO although the HMO failed to assert medical necessity as a ground for denial of an insured's claim. 221 F.3d 279, 288 (2d Cir. 2000). The court reasoned that, in bringing a suit for benefits pursuant to a contract or to federal law, a plaintiff must establish that he is entitled to that benefit. *Id.* at 287–88. Similarly, in this case the entitlement to coverage beyond $360,000 is based on an approval of good health. Accordingly, Plaintiff's waiver claim is denied.

Plaintiff's reliance on *Lauder v. First Unum Life Insurance Co.* is misplaced. 284 F.3d 375 (2d Cir. 2002). The plaintiff in *Lauder* had already established an underlying disability through submission of doctor's statements. *Id.* at 381–81. In rejecting the waiver claim, the court determined that the defendant merely waived its right to further investigate that disability since the plaintiff's qualification for coverage had already been established through the submission of medical reports. 284 F.3d at 381–82. This case stands in contrast to *Lauder*. The approval of good health — whether the burden was on Plaintiff to submit the necessary documentation, or on Defendant to request it — was a

condition of Mr. Yoskowitz's receipt of additional coverage, and we do not deem the defense of lack of good health to have been waived. *See Juliano*, 221 F.3d at 288.

### IV. Conclusion

Based on the foregoing, we deny the cross-motions for summary judgment as to the appropriateness of Defendant's denial of Plaintiff's claim for full benefits. However, we find that the theories of estoppel and waiver asserted by Plaintiff are inapplicable. The parties are directed to submit to the Court in writing within thirty (30) days of this order a schedule for further proceedings in this case.

So ordered.

Dated: Sept. 3, 2009
New York, NY

_____
U.S.D.J.